MIDLAND REALTY COMPANY OF MINNESOTA, RE-SPONDENT, v. HALVERSON, APPELLANT.

(No. 7,440.)

(Submitted November 9, 1935. Decided November 29, 1935.)

[52 Pac. (2d) 159.]

*Mr. Louis P. Donovan,* for Appellant, submitted an original and a reply brief and argued the cause orally.

*Messrs. Harris & Hoyt,* for Respondent, submitted a brief; *Mr. G. G. Harris* argued the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

This is a suit to quiet title. The cause was tried before the court without a jury. Findings of fact and conclusions were made, and judgment in conformity therewith was entered. The appeal is from the judgment.

There is no dispute as to the facts. Thomas A. Halverson was the owner of the land involved herein on October 7, 1918. On that day he and Myrtle M. Halverson, his wife and the appellant, made, executed and delivered to Petters & Co. a first mortgage upon the land in question to secure the payment of the sum of $2,500. At the same time Halverson and wife made, executed and delivered to the same mortgagee a second or commission mortgage upon the same property to secure the payment of the sum of $357.35. In the month of July, 1922, Petters & Co. commenced an action to foreclose the second mortgage which resulted in the entry of a judgment of foreclosure and the sale of the property thereunder to Petters & Co. on March 14, 1924. The sheriff's return on the foreclosure sale showed that the property was sold for the full amount of the judgment, leaving no deficiency. The property was not redeemed, and, at the expiration of the period of redemption, a sheriff's deed was issued to Petters & Co., the purchaser at the sale. On September 14, 1928, the plaintiff herein secured a deed from Petters & Co. which was not placed of record until September 27, 1934.

In 1928 one D. Annis commenced foreclosure of the first mortgage and joined Petters & Co. as a party defendant, they being the holder of the record title. This latter suit proceeded to judgment and sale. At the foreclosure sale the property was bid in by the plaintiff in that action for the full amount of the judgment. Thereafter Annis assigned his sheriff's certificate of sale and conveyed the property in question to the appellant, Mrs. Halverson, who was one of the original mortgagors in both of these mortgages. A sheriff's deed was thereafter issued to her.

The court, after finding the facts, as a conclusion of law decided that whatever title the mortgagor Mrs. Halverson acquired through the conveyance from Annis or through the sheriff's deed and whatever title the mortgagors had acquired in any manner since the execution and delivery of the mortgage through which the plaintiff claims, inured to the plaintiff and vested in it by reason of the mortgage and the warranties contained therein, the mortgagors are estopped from claiming title or any interest in the property adverse or hostile to the plaintiff. The judgment was in favor of the plaintiff in conformity with this conclusion. Defendant Myrtle M. Halverson, as appellant herein, has assigned error upon this conclusion.

The second mortgage, immediately following the description of the property, contained this provision: "This mortgage is given subject to a first mortgage of even date herewith, given by the mortgagor herein to mortgagee herein for the sum of Twenty-five Hundred Dollars ($2,500.00)." In the next paragraph following the above quotation it was written: "And the said mortgagor hereby covenants with the said mortgagee, that they are lawfully seized in fee simple of the said premises, and have good right and lawful authority to sell and convey the same; that they are free from all encumbrances except the above mentioned mortgage, and that the said mortgagee shall quietly enjoy and possess the same, and that the said mortgagor will forever warrant and defend the title to the same unto the said mortgagee against the lawful claims of all persons whomsoever."

Section 8255 of our Codes provides: "Title acquired by the mortgagor subsequent to the execution of the mortgage inures to the mortgagee as security for the debt, in like manner as if acquired before the execution."

The question presented on this appeal is whether, under the facts and the provisions of the second mortgage recited above and this statute, the title which Mrs. Halverson subsequent to the foreclosure and the sale under the second mortgage acquired from the purchaser at the foreclosure sale under the first mortgage, inured to the benefit of the plaintiff.

The appealing defendant contends that when the second mortgage was foreclosed and the property bid in at foreclosure sale for the full amount of the judgment, the second mortgage was thereby extinguished and discharged, and that the relation of mortgagor and mortgagee, which was created at the time of the execution and delivery of the second mortgage, was terminated.

Plaintiff asserts that, under the statute, when once the relation of mortgagor and mortgagee is created, after-acquired title by the mortgagor inures to the benefit of the mortgagee, and that, under the warranties, the defendant is estopped to assert claim to the after-acquired title.

Before determining the exact effect of the statute in question, we will briefly consider the state of the law generally in the absence of statutes relative to the inurement of titles as applied to mortgages. It was generally held that in the absence of warranties of title appearing in the mortgage, there was no estopped on the part of the mortgagor from setting up an after-acquired title in himself: (5 Thompson on Real Property, 784.) It was also generally held that this rule applied especially in those jurisdictions where the mortgage operates merely to create a lien and not as a conveyance of the estate of the mortgagor. (19 R. C. L. 394.) This result was inevitable in all jurisdictions where the theory for the adoption of the doctrine of estoppel against the assertion of after-acquired titles was invoked in order to prevent circuity of action. However, in view of our statute, the inuring of after-acquired titles by mortgagors is not dependent upon the existence of covenants and warranties in the mortgage. This right is based upon a positive statutory provision which in itself mentions no exception. (*Grasswick* v. *Miller*, 82 Mont. 364, 267 Pac. 299.) This doctrine of the passing of after-acquired title is based on estoppel. (*McDermott Min. Co.* v. *McDermott*, 27 Mont. 143, 69 Pac. 715; *Grasswick* v. *Miller*, supra.) The fact that the second mortgage had been foreclosed does not in itself, standing alone, prevent the inuring of the after-acquired title to the benefit of the mortgagee. (*Grasswick* v. *Miller*, supra.)

The modern trend of the courts has been to accept the broad doctrine of the intention of the parties appearing from all the terms and provisions of the conveyance, as controlling regardless of the presence or absence of any special covenant. The great weight of modern authority supports the principle that, whatever the form or nature of the conveyance, if the grantor recites on the face of the instrument, either by express terms or necessary implication, that he is seised or possessed of a particular estate which the deed purpórts to convey or the mortgage to encumber, the grantor and all persons in privity with him are estopped from afterwards denying the same or asserting the title subsequently acquired by the grantor would not inure to the benefit of the grantee.   (Note, 58 A. L. R. 381.)

The leading case adhering to this doctrine is *Van Rensselaer* v. *Kearney,* 11 How. 297, 325, 13 L. Ed. 703, wherein it was written: ''The principle deducible from these authorities seems to be, that, whatever may be the form or nature of the conveyance used to pass real property, if the grantor sets forth on the face of the instrument, by way of recital or averment, that he is seised or possessed of a particular estate in the premises, and which estate the deed purports to convey; or, what is the same thing, if the seisin or possession of a particular estate is affirmed in the deed, either in express terms or by necessary implication, the grantor and all persons in privity with him shall be estopped from ever afterwards denying that he.was so seised and possessed at the time he made the conveyance.   The estoppel works upon the estate, and binds an after-acquired title as between parties and privies.   The reason is, that the estate thus affirmed to be in the party at the time of the conveyance must necessarily have influenced the grantee in making the purchase, and hence the grantor and those in privity with him, in good faith and fair dealing, should be forever thereafter precluded from gainsaying it.   The doctrine is founded, when properly applied, upon the highest principles of morality, and recommends itself to the common sense and justice of everyone.   And although it debars the truth in the particular case, and therefore is not infrequently characterized as odious, and not to be favored, still it should be

remembered that it debars it only in the case where its utterance would convict the party of a previous falsehood; would be the denial of a previous affirmation upon the faith of which persons had dealt, and pledged their credit or expended their money. It is a doctrine, therefore, when properly understood and applied, that concludes the truth in order to prevent fraud and falsehood, and imposes silence on a party only when in conscience and honesty he should not be allowed to speak." Our decision in *Johannes* v. *Dwire*, 94 Mont. 590, 23 Pac. (2d) 971, is in accord with these views.

Here it is clear that when the second mortgage was given it was intended as such and the parties so stated in the mortgage. The exact truth of the situation appeared on the face of the instrument. It is not intimated in the record or in the briefs and argument that fraud tainted any of these transactions.

In the case of *Hawkins* v. *Harlan*, 68 Cal. 236, 9 Pac. 108, 109, it is said: "True, an after-acquired title by the mortgagor ordinarily inures to the benefit of the mortgagee; but this is by operation of the doctrine of relation, which is a fiction of the law adopted solely for the purposes of justice, and will not be given effect when, as in the present case, it would work manifest injustice. (*Gibson* v. *Chouteau*, 13 Wall. [92] 101 [20 L. Ed. 534]; *Shay* v. *McNamara*, 54 Cal. 169.) "

The doctrine of estoppel was invented and engrafted upon the law to prevent wrongs and not to promote them. (*Butterfield* v. *Lane*, 114 Me. 333, 96 Atl. 233.) One will not be estopped from asserting an after-acquired title or interest by reason of a deed or mortgage where the truth respecting one's interest appears from the same instrument. (*Gibson* v. *Chouteau*, 39 Mo. 536; writ of error dismissed in 8 Wall. 314, 19 L. Ed. 317; *Right* v. *Bucknell*, 2 Barn. & Adol. 278, 109 English Reprint, 1146; *Doe Exten. McGill* v. *Shea*, 2 U. C. Q. B. 183.) It is generally held that where a mortgagor acquires title based on the foreclosure of a first mortgage and the second mortgage is valid and outstanding, the title thus acquired inures to the benefit of the second mortgage. (*Martin* v. *Raleigh State Bank*, 146 Miss. 1, 111 So. 448, 51 A. L. R. 442, and note.)

56

The doctrine that a grantor is estopped to assert an after-acquired title applies only when such assertion would involve the denial that the conveyance passed the interest or estate which it purported to pass. (2 Tiffany on Real Property, 2d ed., 2127.) Most of the decisions hold that where, as here, a second or subsequent mortgage has been foreclosed or the debt secured thereby extinguished, and the mortgagor thereafter acquires title resulting from a foreclosure proceeding of the first mortgage, and the mortgagor by the second or subsequent mortgage created a lien in conformity with the expressed intention of the parties to the instrument, no estoppel to assert the title so acquired will arise as against the mortgagor. In the case of *Rauch* v. *Dech,* 116 Pa. 157, 9 Atl. 180, 182, 2 Am. St. Rep. 598, it was said: "When a vendor or mortgagor either sells or mortgages land which he does not own, and afterwards obtains the title thereto, he will not be permitted to set up this after-acquired title to defeat his previous grant or mortgage, for this would be to permit him to perpetrate a fraud on his grantee or creditor. But there is nothing of the kind in the case before us, for it is not pretended that Rauch mortgaged to Dech land to which he had no title, or that he was guilty of any species of fraud whereby Dech was deceived. The plaintiff's lien was lost by force of legal process, and it is not even intimated that Luckenbach's title was not taken clear of that lien. In the meantime, and before the date of the deed of the executors to the defendant, he had received his discharge in bankruptcy, so that, at that time, he was not even the debtor of the plaintiff."

Our statement is supported by the cases of *Goode* v. *Bryant,* 118 Va. 314, 87 S. E. 588, and *Ervin* v. *Morris,* 26 Kan. 664. We conclude that under the facts in the case it was intended, and so stated, in the second mortgage that it was to be a second mortgage; that to permit the defendant to assert the after-acquired title does not permit such party to in any manner deceive the plaintiff or its predecessor in interest, and to hold that the defendant was estopped would operate not to do justice between the parties, but to do injustice to the defendant. The plaintiff and its predecessor in interest have received just what

they bargained for, and no less. It is manifest from the instrument that the mortgagors did not intend to warrant the title as against the first mortgage, and accordingly no estoppel arose against the assertion of the after-acquired title. The trial court was in error in its conclusion.

The cause is remanded to the district court of Toole county with directions to amend the conclusions of law in conformity with the views expressed herein, and to enter judgment in favor of the defendant Myrtle Halverson in accordance with the prayer of her answer. The appellant will recover her costs on this appeal.

ASSOCIATE JUSTICES MATTHEWS, STEWART and MORRIS concur.

MR. CHIEF JUSTICE SANDS, absent on account of illness, takes no part in the foregoing decision.

Rehearing denied December 15, 1935.